## H. & C. NEWMAN *v.* ELIZABETH KLING.

CONTRACTS. *Husband's debt. Deed of trust on wife's land. Cancellation by substitution.*

A married woman who has executed a deed of trust on her lands to secure the payment of the promissory note of her husband, a country merchant, is entitled to a cancellation of the same, in equity, when the *cestui que trust,* his commission merchant, has, after the maturity of the note, without her knowledge or consent, contracted with her husband, upon new considerations and other security, that the balance due on the note shall be treated as an advance for the succeeding year, and accepted from him and discounted, with deduction of commissions, a new note including such balance and an additional advance of money then made, the net proceeds of which new note he credited on the husband's account. These circumstances constitute, in legal effect, a cancellation, by substitution, of the note secured by the deed of trust, and

it is immaterial that the *cestui que trust*, by agreement with the husband, retained that note as security for the new note.

FROM the chancery court of Yazoo county.

HON. H. C. CONN, Chancellor.

This proceeding was begun by the appellee by bill in equity for the cancellation of the deed of trust mentioned in the opinion. The opinion states the case upon which that relief was granted.

*Miller, Smith & Hirsh*, for the appellants.

1. No extension of the two notes of $12,000 each was ever made, and it is manifest that Monroe Kling did not, by the subsequent contracts made and new notes given, intend to substitute any of the latter for the notes secured by the deed of trust. All of these different contracts expressly provided that if Monroe Kling did not comply with all of their stipulations, any and all notes given in connection therewith should become immediately due and collectible, and authorized the appellants to collect the same regardless of maturity. In the agreement of February, 1893, Kling said this: '' My two notes of $12,000 each, due February 1, 1892, and February 1, 1893, secured by deed of trust, against which there is no off-set, same being in full force, principal and interest.'' In the agreement of February, 1894, he expressly stipulated that this deed of trust was in full force, and agreed to procure a new deed of trust securing the three notes of $7,000 each.

Under the circumstances, the law implied a promise on Kling's part and imposed on him the duty of obtaining the consent of his wife to this arrangement, and, if these dealings should be construed as an extension of the two notes of $12,000 each, then the extension was made upon a condition that was never performed and was invalid. When an agreement for forbearance is conditional upon the assent of the surety, which is not given, there is nothing to impair the right of the creditor to proceed at law, for he can elect to treat the contract as at an

end.  *Hunt* v. *Knox*, 34 Miss., 655.  "If, at the time the extension is granted to the principal, the creditor reserves his remedies against the surety, the latter will not be discharged from his liability."  24 Am. & Eng. Enc. L., p. 830; *Calvo* v. *Davies*, 73 N. Y., 211.

Even if there was a specific agreement for extension in February, 1893, it was conditioned upon the notes for $12,000 each being in full force, and, in order for them to be in full force, it was necessary for Kling to obtain his wife's consent. As he did not procure such consent, a part of the agreement was unperformed, and the contract was never binding on the appellants.  The same thing can be said of the contract of February, 1894, for he did not procure his wife's signature to the three notes for $7,000 each, upon the execution of which, by both himself and wife, that contract was conditioned.

2. The record shows indisputably that the two notes of $12,000 each were never parted with by the appellants from the time they came into their hands, with the deed of trust of March 6, 1891, and the mere taking of other notes did not release them.  24 Am. & Eng. Enc. L., p. 833; *Wade* v. *Stanton*, 5 How. (Miss.), 631; *United States* v. *Hodge*, 6 How. (U. S.), 279; *Weakly* v. *Bell & Sterling*, 9 Watts (Pa.), 273.

3. There is another view of this case, however, that strongly appeals to the conscience of a court of equity, and puts Mrs. Kling in the position of being not simply a surety, but absolutely a principal on this debt.  Her plantations were supplied and run entirely by Monroe Kling, and his source of credit was the appellants.  He obtained money from them to enable him to conduct his business, and this business was mainly the running of his wife's plantations, and supplying them from the store.  His wife, therefore, was a direct beneficiary of his dealings with the appellants.  Under such circumstances, the courts have refused to recognize any relation of principal and surety between the husband and wife, and treated them both as principal debtors.  *Gahn* v. *Neimcewicz*, 11 Wend. (N. Y.),

312; *Dickinson* v. *Cogwise*, 1 Sandf. Chy. (N. Y.), 214; *Mc-Fillen* v. *Hoffman*, 35 N. J., 364.

Kling testified that, at the time he failed in business, the Hopewell and Llanado plantations, under mortgage to the appellants, were indebted to him in the respective sums of $3,-725.71 and $4,928.46, and that these plantations were charged with goods and supplies furnished from his store, as any other customer would be.

*Barnett & Thompson* and *Calhoon & Green*, for the appellee.

We affirm that the contract of 1892, fixing the status of the balance to be ascertained on an accounting of the dealings of the year 1892, the only debt the deed of trust secured, as a cash advance for 1893, and the discount of the note of Kling for the year 1893, containing this balance of eight per cent. interest, and placing its proceeds to Kling's credit in account, whereby the debit items of the account were paid and discharged, was a payment, both as between Kling and the appellants, and as between Mrs. Kling and them, of the debt secured by the deed of trust. *Lapeice* v. *Hughes*, 24 Miss., 69.

Again, by the contract of 1893, the balance due by Kling in the account of 1893, was to be a cash advance for 1894, and, pursuant to this agreement, the note of Kling was executed in 1894, and the net proceeds thereof, after discounting the note at 8 per cent. and deducting commissions at $2\frac{1}{2}$ per cent., were placed to Kling's credit in account, and this note is now sued on in another proceeding. The balance included in the new note was, by express agreement, to be treated as a cash advance. The account of 1892 was credited with the net proceeds of the note when discounted, and was thereby settled, and ceased to exist. The account of 1893 was paid in the same way by the proceeds of the note of 1894.

But, even if the debt secured by the deed of trust was not paid, it was discharged by the extension given for a definite time, and for a valuable consideration, without the consent of Mrs.

Kling, who was a mere surety. George's Dig., title Principal and Surety, 12, p. 601; *Timberlake* v. *Thayer*, 71 Miss., 283. The definite time was from the date to the maturity of the new note. The valuable considerations were: First, prepayment of interest; second, the promise to ship 1,500 bales of cotton, or pay $1.25 per bale on the deficiency; third, the giving of a lien, as by mortgage, on all the crops controlled by Kling; fourth, the right to apply all credit as appellants might see fit. *Dubvisson* v. *Folkes*, 30 Miss., 433; *Moore* v. *Redding*, 69 *Ib.*, 847. Mrs. Kling had no knowledge of and did not consent to these contracts, and her husband's pledge of the two notes secured by the trust deed could not vary the consideration of that instrument, which, by its terms, secured only the balance of 1892. *Hunt* v. *Knox*, 34 Miss., 655, relied on by appellants, is inapplicable, for the reason that there was no expectation on the part of appellants that Kling would procure his wife's consent to the agreement of 1892, and also because the agreement in that case was for extension of a judgment, and stipulated that the judgment should "stand with any right or lien the said Hunt may have under it unimpaired against any of the parties thereto as a security for said bill of exchange and the several installments," the bill of exchange referred to being a payment made thereby on the judgment, and the installments being, in the aggregate, the balance due on the judgment. *Buckingham* v. *Walker*, 48 Miss., 609, is also inapplicable to the present controversy. It was there held that the second note was simply a security for the first, which could not be true in a case where the second note included amounts in addition to the original debt.

The extension in 1893 was not the only one. In 1894 a new note was given for the balance due on the dealings of 1893, and it also included interest and commissions, and was made payable November 1, 1894. The cotemporaneous agreement recites the execution of a new note for $28,342.29, and in it he pledges as collateral his life insurance policy, and undertakes

to furnish them three notes for $7,000 signed by his wife as well as himself, and secured by a deed of trust on the property of his wife incumbered by the deed of trust of 1891, which, he said, by way of recital, "was still in full force."

This recital that the deed of trust executed by his wife was still in force, if anything more than mere opinion, meant that it was in force, not for the balance of 1892, but for the balance of 1893, and confirms the position taken that the extension of 1893 released Mrs. Kling. She refused to sign the three $7,000 notes and make a new trust deed, but appellants cannot claim that their acceptance of the note of 1894 and the allowance of time given thereby were thus made inoperative. They are suing on that very note of 1894 now, and have otherwise acted in such manner as to preclude any such claim. The fact that appellants never surrendered the two notes secured by the trust deed is immaterial, and the authorities cited with reference to that fact are without application, since we find that there was here an extension of the debt under an agreement to extend it, and the two notes secured by the trust, if held as collateral, could not be enforced prior to the maturity of the note for the payment of which they were held as security. It cannot be denied with any reason that Mrs. Kling was only a surety. *Porter* v. *Staten*, 64 Miss., 421; *Caldwell* v. *Hart*, 57 *Ib.*, 126.

Argued orally by *Murray F. Smith*, for the appellant, and by *Marcellus Green*, for the appellees.

Woods, J., delivered the opinion of the court.

If it be conceded that the amended answer of appellees should have been allowed to be filed, still there can be no reversal, for, looking through the case as made by that amended answer, we see that the result actually reached by the court below was the same which must have been arrived at if the amendment had been allowed.

The facts upon which we base this opinion are, in substance, as follows, viz.: On March 6, 1891, the appellee executed her

trust deed on the lands therein described, for the purpose of securing the payment of two notes of $12,000 each, given by her husband, Monroe Kling, to appellants, due, respectively, February 1, 1892, and February 1, 1893. On April 19, 1892, Monroe Kling and the appellants entered into a new contract, in writing, wherein it was stipulated that any balance that might remain due from Kling to appellants at the end of that business year should be regarded as cash advanced for the succeeding year; that Kling should ship, for the advances made and to be made, 1,450 bales of cotton to appellants, or pay $1.25 per bale on any deficiency in that number of bales; and that the appellants should have a lien, by way of mortgage, on all cotton and other products grown or controlled by him, Kling, with the further agreement that the proceeds of crops should be "imputed to any debt" due by Kling to the appellants; the note given appellants by Kling, in accordance with this contract, covering the balance due for 1891, which was to be regarded and treated as an advance for 1892, as well as the money to be actually advanced for 1892, and amounting to something over $23,000, was discounted at 8 per cent., and the proceeds credited to Kling, to wit, about $21,500, and this note, in November, 1892, when it fell due, was charged to Kling on his account with appellants.

On February 11, 1893, and after maturity of the last note of $12,000, for whose payment appellee had given the security of the trust deed before mentioned, Kling and the appellants entered into another written contract, whereby, in consideration of advances to the amount of $24,000, made and to be made by appellants to Kling for that year ($20,000 being the balance due after settlement for the year 1892, and treated as that much cash advanced, and $4,000 to be thereafter advanced from time to time), Kling obligated himself to ship the appellants, during that year, 1,500 bales of cotton, and to pay $1.25 per bale for any deficiency in that number, and again gave a lien, having the force and effect of a mortgage, on all cotton and other pro-

ducts grown or controlled by Kling, to secure the new note then given by Kling to evidence the indebtedness for the year 1893. The net proceeds of this note of 1893, due November 1, 1893, were placed to Kling's account as a credit by appellants, to wit, the sum of $24,000, discount at 8 per cent. and commissions at $2\frac{1}{2}$ per cent. to the appellants having been deducted from the face of the note of $26,107.87. By this contract of 1893 it was provided that the two notes of $12,000, to secure whose payment appellee had executed the trust deed, should be retained as security for the last named note of $26,-107.87, and policy No. 292,989 in the Equitable Life Insurance Co. was also pledged as like security, although it appears that the original $24,000, for whose payment the trust deed had been given, had been reduced to about $17,000, even by the method of appropriation of payments employed by the appellants. This contract of 1893, like the others, contained the stipulation that any balance due on the account of Kling for the year 1893 should be treated as a cash advance for the year 1894.

In February, 1894, a new note for $28,342, due November 1, 1894, was executed by Kling to appellants, which represented the balance from 1893 and was treated as so much cash advanced by appellants, together with several thousand dollars to be advanced during the year, and the net proceeds of this note, after deducting 8 per cent. discount and $2\frac{1}{2}$ per cent. commission, was entered to Kling's credit. Now, the contract between appellants and Kling, entered into in February, 1894, bound Kling to ship appellants 1,500 bales of cotton, and, in default thereof, to pay $1.25 for each bale he failed to ship, and a lien, in the nature of a mortgage, was created on cotton and other products grown or owned by Kling, to secure compliance with his obligation, and the said life insurance policy was again pledged to appellants. No reference whatever is made in this contract of 1894 to the original notes for $12,000 each, but a totally new plan for securing the note and contract

of 1894, additional to that just mentioned, was adopted by Kling and the appellants, whereby Kling "agreed to furnish them [the appellants] three notes of $7,000 each, with 8 per cent. interest from date, payable one, two, and three years after date, signed by myself and wife, secured by deed of trust, on which my present deed of trust to them rests, which is now in full force."

The appellee refused to carry out the agreement made by her husband and appellants, and, after final effort to induce her to join Kling in the execution of the three notes for $7,000 each, and a deed of trust to secure the same, and her final refusal so to do, one of the appellants, in view of appellee's refusal, in answer to Kling's inquiry as to what he must do, told Kling to "go right along as though nothing had happened." The parties to the contract accordingly went right along with their business as though appellee had not refused to sign the three $7,000 notes and secure their payment by her trust deed, the appellants making advances as usual and retaining Kling's note for $28,342 for advances for the year 1894, and this note has been sued upon by appellants in the chancery court of Yazoo county.

It seems clear to us that the contract between appellants and Kling to treat the balance remaining due by Kling, on settlement of his account for 1892, as an advance of money for the year 1893, and the discount of the note of Kling, containing this balance as well as the cash actually advanced, and the crediting Kling's account with the net proceeds of the note of 1893, and the contract of 1894 to treat the balance of 1893, also, as cash advanced for 1894, the discount of Kling's note of 1894, and the deducting of commissions therefrom, in addition, at $2\frac{1}{2}$ per cent., and the crediting of Kling's account with the net proceeds, taken in connection with all the facts recited by us, show a cancellation by substitution of the notes for which appellee's trust deed was security, despite the effort of appellants to transport bodily this trust deed and incorporate

it into the new contracts made between Kling and themselves for the subsequent years.

*Affirmed.*